UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No.: 22-mj-8336-REINHART

UNITED STATES OF AMERICA,

    Plaintiff,
v.

JOFF STENN WROY PHILOSSAINT,

    Defendant.
_____/

FILED BY ___KJZ___ D.C.

Aug 15, 2022

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - West Palm Beach

**PRETRIAL DETENTION ORDER**

    The Court, pursuant to 18 U.S.C. § 3142, commonly known as the Bail Reform Act of 1984, hereby ORDERS the Defendant, JOFF STENN WROY PHILOSSAINT, detained pursuant to the provisions of Sections (b), (e) and (f).

    Defendant appeared before the Court on August 12, 2022, for a detention hearing. The Government moved for pretrial detention of Defendant on the basis that he presents a serious risk of flight under 18 U.S.C. § 3142(f)(2)(A). The Court finds that the Government does have the statutory right to move for detention under § 3142(f)(2)(A) in light of the facts of this case.

    After conducting a detention hearing in this case on August 12, 2022, and carefully considering all of the factors under § 3142(g), the Court specifically finds that the Government has established by a preponderance of the evidence that the Defendant presents a serious risk of flight if released pretrial and that there are no conditions or combination of conditions which will reasonably assure the appearance of Defendant as required. The Court takes judicial notice of the

1

Criminal Complaint [DE 3] filed against Defendant and the Pretrial Services Report. Further, the Court makes the following findings of fact with respect to this order for detention:

Factors:

    **a)**     **The nature and circumstances of the offense charged, including whether the offense is a crime of violence or involves a narcotic drug.**

Defendant is charged by Criminal Complaint with one count of conspiracy to commit wire fraud, in violation of 18 U.S.C. § 1349 (Count 1); one count of conspiracy to commit money laundering, in violation of 18 U.S.C. § 1956(h) (Count 2); one count of aggravated identity theft, in violation of 18 U.S.C. § 1028A (Count 3); and one count of procurement of citizenship or naturalization unlawfully, in violation of 18 U.S.C. § 1425 (Count 4). [DE 44]. If convicted of Count 1, Defendant faces up to twenty years in prison, up to three years of supervised release, and up to a $250,000 fine or a fine that is twice the gross gain or loss resulting from the offense, whichever is greater. If convicted of Count 2, Defendant faces up to twenty years in prison, up to three years of supervised release, and up to a $500,000 fine or a fine that is twice the value of the property involved in the transaction, whichever is greater. If convicted of Count 3, Defendant faces up to two years in prison (consecutive to any sentence imposed on Defendant's other charges), up to one year of supervised release, and up to a $250,000 fine. Finally, if convicted of Count 4, Defendant faces up to ten years in prison, up to three years of supervised release, up to a $250,000 fine, and a mandatory revocation of citizenship. Thus, while the offense with which Defendant is charged is not a crime of violence, violation of section 1951, or a federal crime of terrorism, and does not involve a minor victim or a controlled substance, firearm, explosive or destructive device, Defendant's charges are very serious.

**b)**     **The weight of the evidence against the Defendant.**

The weight of the evidence against Defendant is substantial. The following evidence was established by the Criminal Complaint, the Government's proffer, and the testimony of Special Agent Michelle McDaniel of the Federal Bureau of Investigation.

Defendant and co-conspirators participated in a Paycheck Protection Program (PPP) and Economic Injury Disaster Loan (EIDL) loan fraud scheme, whereby false and fraudulent PPP and EIDL loan applications were utilized to divert proceeds for the personal use and benefit of Defendant and other conspirators. Specifically, it is alleged that Defendant and co-conspirators submitted PPP and EIDL loan applications on behalf of 152 companies, including 26 companies in which Defendant acted as the payroll administrator.[1] Based on these PPP and EIDL loan applications—which purportedly contained false statements as to the companies' number of employees and monthly expenses[2]—the conspirators received $26,000,000 total in PPP and EIDL fraudulent loan proceeds. And, of the $26,000,000 loan proceeds received, it is alleged: (1) that approximately $4.8 million of these proceeds were obtained on behalf of the 26 companies for which the Defendant was the payroll administrator; and (2) that Defendant received kickbacks of approximately "10% of the value of the loan received for his assistance" in carrying out the fraudulent scheme in connection therewith. [DE 3 at 9]. Defendant allegedly laundered and utilized these kickbacks and certain loan proceeds for his own personal use and benefit thereafter.

---

[1] This included a company which Defendant owned, and for which Defendant received approximately $350,000.
[2] It is also alleged that many of these companies did not qualify for loan proceeds and only became "active" for the purpose of receiving loan proceeds. Additionally, Government agents interviewed several purported "employees" of these companies, with many of the "employees" reporting that they had never worked there and that their names and social security numbers were used without their permission.

Notably, as part of the Government's trace of the PPP and EIDL loan funds at issue, the Government traced certain proceeds to accounts controlled by Defendant in both the United States and the Dominican Republic. To this end, the Government proffered that a substantial sum of money was transferred into Defendant's fiancée's law firm's trust account and later sent to the Dominican Republic.[3] However, at the time of the August 12, 2022 detention hearing, the Government stated that it was still in the process of investigating and tracing loan funds.

    c)    **The history and characteristics of the Defendant.**

The following evidence was also established by the Criminal Complaint, the Pretrial Services Report, the Government's proffer, the Defendant's proffer, and the testimony of Special Agent Michelle McDaniel of the Federal Bureau of Investigation.

Defendant was born in Haiti and has lived in the United States since 2017. Defendant obtained United States citizenship in February of 2021. However, as stated earlier, if convicted of his current charge of procurement of citizenship or naturalization unlawfully, in violation of 18 U.S.C. § 1425, Defendant faces mandatory denaturalization and loss of citizenship.

With respect to Defendant's family, Defendant is divorced and is now engaged to co-conspirator Mariel Tollinchi—a member of the Florida Bar. Defendant has two children with his ex-wife; specifically, a two-year old and a five-year old. While it was reported in the Pretrial Services Report that Defendant has a split custody agreement with his ex-wife, the Government took issue with such assertion during the detention hearing and maintained that the children were not living with Defendant and that Defendant had not seen the children in quite some time.

---

[3] Defendant's fiancée and alleged co-conspirator, Mariel Tollinchi, is a member of The Florida Bar. It is alleged that, as part of the fraudulent scheme, Ms. Tollinchi laundered fraudulent proceeds through her attorney trust account for Defendant.

Defendant's ex-wife, two minor children, father, mother,[4] brother, and aunt all live in South Florida. In fact, Defendant's aunt appeared at the August 12, 2022 detention hearing and was willing to sign a bond to secure Defendant's pre-trial release.

As to other notable characteristics, Defendant travels to the Dominican Republic frequently, and has both business and properties in that country. Indeed, in the last 22 months, Defendant has taken 21 international trips to the Dominican Republic and was scheduled to take yet another trip to the Dominican Republic prior to his recent arrest.

### d)   The criminal history of the Defendant.

Defendant has no prior criminal history in the United States. Similarly, the Court is unaware of any criminal activity of Defendant elsewhere.

### e)   The likelihood of Defendant's appearance in court if released.

The policy underlying the Bail Reform Act "is to permit release under the least restrictive condition compatible with assuring the future appearance of the defendant." *United States v. Price*, 773 F.2d 1526, 1527 (11th Cir. 1985) (per curiam). When the United States seeks to detain a criminal defendant pending trial based on his or her status as a serious flight risk, it must prove by a preponderance of the evidence that no condition or set of conditions will reasonably assure his or her presence at trial. *United States v. Medina*, 775 F.2d 1398, 1402 (11th Cir. 1985); *United States v. Qazi*, No. 12-60298-CR, 2012 WL 7050588, at *3 (S.D. Fla. Dec. 19, 2012).

Based upon all of the evidence and information presented, and for the reasons stated in open court, this Court finds that the Government has established by a preponderance of the evidence that the Defendant presents a serious risk of flight if released. Further, the Court finds by

---

[4] Defendant proffered that his father and mother were sick and that he takes care of them, although not full-time.

a preponderance of the evidence that there is no condition or combination of conditions of release which will reasonably assure Defendant's appearance in court if Defendant is released pretrial. Specifically, the Court finds that the following facts, among others, weigh in favor of detention: (1) Defendant's significant role in this large, sophisticated, complex PPP and EIDL loan fraud scheme; (2) the substantial amount of money transferred to the Dominican Republic, which funds are available to Defendant to flee and evade capture; (3) Defendant's significant international travel, including frequent travel to the Dominican Republic; (4) the presence of substantial amounts of laundered proceeds in this case, including substantial funds which are still unaccounted for; (5) Defendant's recent arrival to the United States in 2017; (6) Defendant's tenuous United States citizenship, which would be revoked if Defendant were to be convicted of procurement of citizenship or naturalization unlawfully, as the Government alleged that Defendant became a naturalized U.S. citizen during the course of this conspiracy by making false statements to INS; and (7) the nature of this sophisticated scheme, which allegedly utilized a Florida-barred attorney's trust account to launder money.

On balance, and by a preponderance of the evidence, the Court finds that there is a serious risk that Defendant will flee if released pre-trial. Defendant faces a substantial prison term if convicted, along with revocation of his U.S. citizenship and deportation. Based on all the factors presented, including but not limited to, the serious nature of the charges, the strong weight of the evidence, the sentence that Defendant is facing if convicted, the unaccounted-for PPP and EIDL loan funds, the transfer of fraudulent loan funds to the Dominican Republic, and Defendant's charge of procurement of citizenship or naturalization unlawfully—which would subject

Defendant to mandatory loss of citizenship— this Court finds that Defendant presents a substantial or serious risk of flight or nonappearance and must be detained.

### Directions Regarding Detention

For the foregoing reasons, it is hereby **ORDERED** that Defendant is committed to the custody of the Attorney General or a designated representative for confinement in a corrections facility separate, to the extent practicable, from persons awaiting or serving sentences or held in custody pending appeal. Defendant must be afforded a reasonable opportunity to consult privately with defense counsel. On order of a court of the United States or on request of an attorney for the Government, the person in charge of the corrections facility must deliver Defendant to the United States Marshal for the purpose of a court appearance.

**DONE AND ORDERED** in Chambers at West Palm Beach in the Southern District of Florida, this 15th day of August, 2022.

WILLIAM MATTHEWMAN
United States Magistrate Judge